Case 21-1844, Jimmy Baugh v. Noah Nagy. Argument not to exceed 15 minutes per side. Mr. McGrath, you may proceed for the appellant when ready. Please renounce your rebuttal time. May it please the Court, Christopher McGrath appearing on behalf of Mr. Baugh. We are requesting two minutes of rebuttal time. Fine. Mr. Baugh was convicted by jury in the Circuit Court for the County of Wayne in Detroit, Michigan of felony murder. And he's currently doing life imprisonment, mandatory life as a result. At Mr. Baugh's trial, only two of all of the witnesses that testified could put him at the scene of the shooting. Detective Joanne Miller testified that she took a statement from Mr. Baugh indicating that Mr. Baugh was in the backseat of a stolen jeep at the time of the shooting, that the jeep was being driven by a gentleman named Lafayette Dearing, and that in the front passenger seat, a gentleman named Robert Kwasniewski actually got out of the jeep and shot the decedent, Craig Land. Mr. Baugh's statement to Detective Miller didn't move the needle very much, though, because it merely placed him present at the scene, and it didn't make him an aider and a better, because he didn't play any meaningful role. That's why the case ultimately was dismissed at the beginning after the first preliminary examination. It was later reinstated because the state was able to cut a deal with Mr. Kwasniewski. Mr. Kwasniewski was the state's star witness, the other witness who could testify that Mr. Baugh was at the scene. And his testimony was important because he told the jurors that there were only two people in the stolen jeep at the time Mr. Land was shot. Mr. Kwasniewski said he was the one who was driving the stolen jeep, that he pulled up basically alongside Mr. Land, who was riding on a bicycle, and kind of cut him off, stopped him from riding further on the sidewalk, and then Mr. Baugh got out of the jeep and shot him two times, which ultimately resulted in Mr. Land's death. Unbeknownst to the defense, there was a third statement out there, a statement from a gentleman named Ricky Sayles. Mr. Sayles was interviewed by Detective Miller the day after she interviewed Mr. Baugh, and the same day that Mr. Kwasniewski was interviewed. Now, Mr. Sayles had some important things to say because he talked about how the next day, the day after the shooting, he was present with Mr. Deering, with Mr. Baugh, and with Mr. Kwasniewski. And Mr. Kwasniewski, according to Mr. Sayles, told him that Kwasniewski was the one that did the shooting here. Kwasniewski was the one who got out and shot the decedent, Mr. Land. Now, Kwasniewski alleged in his conversation with Mr. Sayles that Mr. Baugh was driving the jeep, that he pulled up alongside Mr. Land, and then Mr. Kwasniewski shot Mr. Land. At the very end of the statement that Sayles gave to Detective Miller, it also contains an excerpt where Detective Miller asked Mr. Baugh, well, did Jimmy say anything? And the answer is, Jimmy said that Kwasniewski did the shooting and that he drove away. Those were the three words. He drove away was the quote. This, of course, would have been incredibly powerful impeaching evidence, especially in a case where the state relies so heavily on one witness, Mr. Kwasniewski. Didn't that statement put him in the car, though, Sayles' statement? Sayles' statement, yeah, the short answer is yes, Your Honor, it did. The portion of the statement talking about what Mr. Kwasniewski said, said that Mr. Baugh was driving the car, pulled up alongside Mr. Land, and then Mr. Kwasniewski shot Mr. Land. The portion talking about what Mr. Baugh admits to is that, quote, he drove away. Now, bear in mind, if the defense had had access to this evidence, Mr. Kwasniewski, of course, would have been very powerfully impeached, and it would have been difficult for the jurors to buy anything that he said. There was an instruction that the defense would have been entitled to, the Michigan model jury instruction 4.5, which would have instructed the jurors to consider that statement only for impeachment purposes and not for the truth of the matter asserted. But then wouldn't there be two competing stories about what happened, and wouldn't it be for the jury to resolve which witness to believe?  The statement that Mr. Baugh made to Detective Miller, and Detective Miller testified in depth about that statement. That statement, of course, left Mr. Baugh in the back seat, and so there wouldn't have been a basis to convict him under an aiding and abetting theory because mere presence under Michigan law is not enough to satisfy the aiding and abetting theory. Right, but there was still the other story, which had Baugh either being the shooter or the driver of the car. And why wouldn't the jury then be able to decide who's telling the truth and decide, of course, they have to prove beyond a reasonable doubt, the prosecution does, but they could decide that Baugh's story was not believable and that Krasnuski and Sales combined are enough. Well, Your Honor, as this court pointed out in Jackson v. Stovall, the importance of impeaching evidence is not that a witness made one statement that was true and one statement that was untrue. The importance of impeachment evidence is that it calls into question the entire story of the witness. So after being impeached with Mr. Sales' statement, any reasonable juror would have been inclined to reject his testimony altogether. Now, that would leave us, though, it would leave us with the statement that Mr. Baugh allegedly made to Mr. Sales saying, he drove away. Mr. Baugh didn't admit to driving to the scene. He didn't admit to being involved in a robbery or anything like that. All that's left is those three words, he drove away. And so, yes, Your Honor? What was the he in that statement? You say he drove away. That's right. Who is he? I'm left scratching my head just as much as you are about that statement, Your Honor. It doesn't specify. And it's at the very end of Mr. Sales' statement. Now, the state, of course, would argue that the he is Mr. Baugh. But who knows? That's all they have. Your Honor, if you're left with Mr. Sales' statement, and after you remove Mr. Kwasniewski from the equation because he's been so powerfully impeached, you're left with he drove away. And Mr. Baugh doesn't specify who he is in the statement. One of the problems, though, with Sales' statement is that it certainly was relevant to the impeachment of, pronounce that, Kwanewski? Kwasniewski, Kwanewski. One of his nicknames. Lucky, yes. He was the prosecutor's key witness. But it also contradicts his narrative that Baugh was the shooter and he was the driver. And it impeaches Baugh's written statement that During was the driver and he was merely in the backseat. Right. What's important, though, is that the state has the burden of proof here. The state, no matter which statement is actually true, the state has to prove beyond a reasonable doubt that Mr. Baugh was an aider and a better here. And Sales' statement, hey, it's not perfect for the defense. I acknowledge that. But it leaves the state with just a very tissue-thin case. He drove away. That's not much to work with in terms of trying to persuade 12 reasonable jurors that they should convict Mr. Baugh on the basis of this evidence. And, again, it's important to note that Mr. Baugh would have been entitled to a jury instruction that the jury could only consider this evidence for impeachment purposes and not as substantive evidence. So is there a problem here that we're getting this case on a second or successive petition for habeas and that under 2244B2BII we have to be able to say that no reasonable fact finder would have found the applicant guilty? I don't think it's a problem, Your Honor. I think it presents a challenge to us. Of course, it's an exacting standard, but Congress didn't intend it to be an impossible standard. How do you say that no reasonable juror could have convicted Mr. Baugh? Because I would go back to Judge Guy's question. He drove away. It doesn't even talk about who the he is in that statement, and there's nothing else, nothing else. There's no physical evidence placing Mr. Baugh. But there's Kwasniewski's testimony. But Kwasniewski is very powerfully impeached with evidence that directly contradicts his statement that he made to the jurors. I mean, it's not just a statement that, well, you know, you said that he was wearing a red shirt, and isn't it true that he was wearing an orange shirt? This is something which contradicts him on the most important point of the case, the roles of the people that were there. So Mr. Sales' statement wasn't just helpful to the defense. It was material. It was prejudicial in the sense that it completely obliterated the State's case by completely obliterating Mr. Kwasniewski's narrative. It stands in direct contradiction to what he said about the most important point in the case. Well, you know, you can't go back and, you know, recreate the scene in the courtroom, but it seems that if Sales had testified, he would be subject to impeachment too. Perhaps, Your Honor. And I acknowledge it is difficult to go back and try and recreate exactly what would have happened, but that's what the standard requires is for Your Honors to do the best job that you can in terms of trying to piece together what the jury would have thought had it had this additional evidence. I see that I am running short on time here. I reserve two minutes of rebuttal, unless the Court has any. Just one thing here. Mr. Sales' statement is unsworn, and we've got the problem that if the case were sent back, we don't know if Mr. Sales would even testify at all. He might take the Fifth Amendment. And whatever we say what the import of a Sales statement would be is really speculative. What would you say about that? I think it's important to point out, Your Honor, that when Mr. Sales testified at the first preliminary examination, which resulted in the dismissal, the initial dismissal, without prejudice of Mr. Boggs' case, he testified. I don't even know any of these guys. Do you know Jimmy Boggs? No. Do you know Lafayette Dearing? No. Do you know Robert Kwasniewski? No. So on the one hand, he could take that approach again. He could, as Your Honor points out, invoke the Fifth. But it's not Mr. Sales getting up on the stand and testifying as to what's in his statement that's so important. It's having that statement and being able to ask Mr. Kwasniewski when you're cross-examining him about the statement. That's where the statement had its real power. And the trial counsel, Mr. O'Donnell, would have been able to do that, I submit. Well, why would that be of much value? Mr. Laskiewski, I'm probably mispronouncing, if he's cross-examining about the statement, he could simply say, well, I don't know anything about that statement. I can't tell you anything about that statement. I don't know why Sales said what he said. From that vantage point, why is this statement so critical? Even hearing those questions, I think, would have been important for the jurors. I mean, Mr. O'Donnell did a pretty good job of nicking Mr. Kwasniewski up as a witness. He spent basically his whole cross-examination trying to pick apart Mr. Kwasniewski's credibility. And then for the jurors to hear questions about, well, isn't it true that you said something completely contradictory to someone else? That might very well have tipped the scale in favor of the jurors just outright rejecting Mr. Kwasniewski's testimony. And, you know, I would urge the court, too, as you're reviewing the testimony of Mr. Kwasniewski, to take note of the fact that Kwasniewski, he wasn't horrible about making concessions when he had to make a concession. You know, you're willing to lie to the police when it benefits you, right? And he conceded that. They found a .22 shell casing in your pocket, right, at the time of your arrest. He conceded that. You steal cars, you're dishonest. He conceded that. So, again, it's difficult to say exactly what Mr. Kwasniewski would say when confronted with this statement, but I would submit that there's a fair chance that he would have been straightforward about it. One last thing, because there's not time to discuss it, but even if you get over all the hurdles you're talking about, you still have some in-depth problems in terms of whether this claim was adjudicated in state court, and that's kind of labyrinthian as to what court did what and what standard applies. But that is an issue in the case, even if your argument relative to the significance of the sales statement prevails. It is definitely an issue in the case, Your Honor. We acknowledge that. And we briefed that issue. We would respectfully submit that EDPA deference does not apply here. The trial court's opinion denying Mr. Boggs' second motion for relief from judgment analyzed the Kress standard and did that in depth. They applied Kress to find that Mr. Boggs hadn't satisfied actual prejudice requirement. But as we pointed out in our brief, Kress is a state law opinion, and throughout its opinion, the trial court never even mentioned Brady, never even mentioned the federal constitution. Does Kress rely on the same concepts as Brady? Similar concepts, Your Honor, but Kress coupled with Grissom, which was also discussed in the trial court's opinion, broadens the requirement. Kress imposes a diligence standard, whereas Brady doesn't, and then Grissom imposes an exculpatory connection requirement, whereas Brady doesn't. So the standards are similar, but certainly not the same as Brady. They're actually more exacting, we submit, than Brady. I don't have a clock to show how much time you've used. Do you still have time? No, I've used almost 20 minutes, Your Honor. Well, if you want to save your rebuttal time, that's fine. Thank you. Good morning, Your Honors, and may it please the court. Jared Schultz, Assistant Attorney General for the State of Michigan, on behalf of the respondent. I think it's important in this case to recognize that this is not a direct review, not direct appeal of a criminal conviction. We're not reviewing de novo a Brady claim in this case. Instead, this is a habeas action where we're reviewing a state court conviction, and not only do the typical requirements when reviewing a state court conviction apply, but also because this is Petitioner's second petition, the heightened requirements of 2244B2B apply. And that means that the Petitioner must show that he was diligent in discovering the factual predicate of his claim, and also by clear and convincing evidence that no reasonable fact finder would have found the Petitioner guilty beyond a reasonable doubt, absent the alleged constitutional violation. Well, you know, the district judge already found that he was diligent and that he couldn't have known before it was disclosed about the sales statement. We would give that pretty good import, wouldn't we? Well, Your Honor, I think that is the case. However, given the facts that came out at the evidentiary hearing, combined with the facts in the state court record, I think that the district court judge overlooked some things, and it's clear that he erred in that decision. I know that kind of puts me in an awkward spot. I'm defending the district court's decision overall, but I'm also saying that the due diligence prong is, at least as it was resolved at the district court level, it was clearly erroneous. And the reason I say that is because, first of all, you look at the state court record. Nothing in the state court record supports a finding that this statement was suppressed. The defense's argument, the theory at trial in this case, was that he was not there at all. He was not present. They had Boggs' statement that he was in the back seat, and they didn't even say that that was true. The argument at trial was that he wasn't there. Mr. Sales' statement, if that was used at all, would only support the prosecution's theory that not only was he there, he was actively participated in the crime. It was reasonable, even having this statement, for defense counsel to come up with this alternative theory. So nothing in the record, in the state court record, says that this was actually suppressed. Now, what Petitioner relies on is the evidentiary hearing and his after-trial statements where he says, I didn't get this statement until Mr. Sales sent it to me in 2015. But both the Petitioner and Mr. Sales were significantly discredited at the evidentiary hearing. First of all, the Petitioner, there were statements that he made prison calls to his relatives where he said, and this was just months after he supposedly got this from Mr. Sales, he says, I don't know where I got this from. I was looking through my- Where he got what from? I'm sorry? Where he got what from? This statement, I'm sorry. Okay. He says, I don't know where I got this statement from. I was looking through my paperwork and I found this statement. Now, that doesn't make any sense to say that, especially to your relatives. He does have an explanation for this, that he was trying to be ambiguous over the prison telephone. Well, and I guess my argument to that is that doesn't make sense because he told at least one of them, I believe it was his uncle, that, well, now he has to testify, but he's off of parole now, so I don't have to worry about them giving him, the government giving him not one- Going after Sales for lying is the theory. Correct. Yes, I'm sorry. Why isn't that a reasonable explanation for the defendant vow to give? Well, because he said in this call that he admitted that Sales was going to have to testify, so it doesn't make sense to say that I was trying to keep Sales out of this if he already admitted to his uncle he's going to have to testify. He's already putting him in it. If you're saying, if he's saying, yes, Sales is going to have to testify, why would he say, why would he be ambiguous about how he got the statement in the first place? I guess that, to me, that is kind of contradictory and doesn't, his explanation doesn't hold water. Well, we're not trying to retry the case here. I guess the most important thing for you to address is why the petitioner knowing about the Sales statement much earlier or at the time of trial or prior to trial, why that wouldn't have made a difference in persuading the jury. I guess that's really what we're trying to understand. One, I think, I believe it was your Honor, got to that at the end of opposing counsel's argument, is all that he's saying the statement would have been used for is impeachment evidence. And I guess it's a little unclear whether that would have even come in. This is not Mr. Kwasniewski's statement to the police. This is a third party, Mr. Sales' statement saying what Mr. Kwasniewski allegedly told him. The petitioner is kind of operating on the fact that, well, the jury automatically hearing the statement would have found Kwasniewski incredible because he lied. But the jury doesn't have. Knowing about a statement could have affected the petitioner's counsel's cross-examination and cross-examination strategy with regard to the other people allegedly present at the time of the crime. I mean, if the petitioner's lawyer had known about the statement, presumably he would have factored that into his cross-examination of Mr. Kwasniewski and Mr. whoever else had knowledge of the crime. Don't you think? Yeah, I think it could affect it, but I don't see how it would affect it very much because all we have is a statement from someone who doesn't appear at trial to testify. So the jury can't address his credibility. There's no indication from petitioner or anyone else that he would have testified at trial. And the only indication in the record of Mr. Sales is that he is a vague reference from Mr. Kwasniewski that he participates in all these crimes with all these individuals, with Deering, with petitioner, with Kwasniewski. And in fact, Mr. Kwasniewski made an offhand comment, didn't have anything to do with this crime, that Sales actually shot and killed or shot someone else in a different armed robbery. So to say that, well, this person who commits robberies, who is not present, is automatically credible over Kwasniewski, who the jury is evaluating firsthand in front of them, I don't think is a very good argument. Because, again, what I was getting at, Your Honor, is the jury doesn't have to accept this statement from Mr. Sales. The jury could still say, well, I find Mr. Kwasniewski credible in this case, and I think that's the better reading of the record. Now, also, perhaps the jury argument could be made that, whilst Mr. Kwasniewski's testimony somewhat could have been discredited, but the jury could have also found that maybe he was lying about the roles that these two played. But nothing in that statement discredits Kwasniewski's testimony that both him and the petitioner actively participated in this crime. And I think it's important to remember that Mr. Kwasniewski was actually charged with the same crime for doing what Mr. Sales said was actually Mr. Bogg's role. And I know that's going in circles here, but the only reason Mr. Kwasniewski got second-degree murder was because he agreed to testify against Mr. Bogg. To tell the jury, well, actually, Mr. Bogg was the driver, as an alternative theory, doesn't discredit the prosecution's aid and abetting theory whatsoever. What in Sales' statement says that Bogg was an aider or abetter? Well, he puts him as a driver. Where does he put him? So the beginning statement, Kwasniewski told me he had shot a white guy on Navarre and Hayes. He told me Jimmy was driving. Correct. So after he fell to the ground, then Jimmy drove off. Correct. So Jimmy was driving, they drove off, or Jimmy drove off, and then there's a statement in there that they pulled up on the white guy. They pulled up, doesn't say Kwasniewski told Bogg to go over to a certain spot so that he could commit a robbery. It says they pulled up and, you know, inferring that they made a joint decision that they're going to rob this person. And again, we're not talking about Mr. Sales' testimony being, Mr. Sales testifying at trial. All we're talking about is perhaps defense counsel asking, did you tell Mr. Sales that you were actually the shooter and that Mr. Bogg was the driver? You know, that's not powerful testimony, as the other side puts it. That's just one statement, again, from someone who doesn't appear to testify. Yeah, but at a trial, if you have Kwasniewski saying Bogg did the shooting and then you have Sales saying, no, Kwasniewski said he Kwasniewski did the shooting, then it would seem that, and you also have Detective Miller's statement that Bogg said he was just in the backseat, then you would think that under the requirement of conviction beyond, guilt beyond a reasonable doubt, that it would be impossible for a reasonable jury to convict under those circumstances. I would disagree with that because, first of all, under aiding and abetting theory, which was raised at trial, which the jury was instructed on, a person who aids and abets is just as guilty as the principal. So the jury then will have, okay, in that scenario, three different scenarios. Three different versions, right. Three different versions. Two of them put Mr. Bogg as guilty as an aider and abetter. And the third one is by the petitioner himself, which has an obvious motive, who has an obvious motive to lie. So to me, that is definitely beyond a reasonable doubt. The jury, again, doesn't have to agree on which of those scenarios is true. They just have to agree that one of those first two was true. And, again, this is not a sufficiency case. It's petitioner's burden to prove that not only was it suppressed, but that this was prejudice ensued. And that's not even getting to the clear and convincing evidence standard that I mentioned earlier. Clearly, I don't think in this case you can say that not one reasonable juror, and that's the standard. It's not that one reasonable juror would have changed their mind and he gets relief. It's not one reasonable juror could have found him guilty, given this allegedly suppressed statement. And then I just want to go again to Judge Guy's question, I guess, about ad pediferens. And that's if you get past the hurdle of 2244, which I think is a very high hurdle. But if you can get past that, there's still ad pediferens here. And for the reasons I outlined in the brief, because the- What should we be deferring to under ad ped? Is it the conclusion that there was no Brady violation? No, Your Honor, and I concede there was no Brady determination. There was no decision under Brady that the state court made. The state court instead evaluated Cress, which is a newly discovered evidence test. But there was a prejudice component, and that was the only thing that the district court relied on was the prejudice standard. So to say that there was all these other prongs that Cress requires doesn't matter in this case because the only thing that the state court did was say there was no prejudice. And did the state court define prejudice the same way that Brady would? I believe so. You know, I don't have that in front of me, Your Honor. I believe it was the same, that there was not a reasonable likelihood that a different outcome would result. But I- Wasn't this where, and forgive me if I'm wrong, wasn't this where the district court ruled against you and said that there was a Brady violation but that it didn't meet the threshold of the second or successive petition? No, Your Honor. Am I wrong? I believe, Your Honor, we're actually talking about the state court's decision here. That's what we give epidefference to. The state court did not find that that was the district court and the federal district court. Right, and I was asking maybe inartfully what was wrong with the federal court's ruling. You're taking us back to the state court's ruling on the Brady violation not existing, right? Correct. I guess now I'm focusing on the prejudice component, which the district court did say gets epidefference, and it was reasonable for the state court to say there was no prejudice resulting from the allegedly suppressed statement. And I think there's also, and I apologize, this wasn't in my brief, but there's also another argument, and that is that, you know, Harrington v. Richter says if there's no reasoning on a federal claim, it still gets epidefference and you still have to say whether that was a reasonable determination. And to the extent you say there was no decision on Brady, you have to presume that the state court silently rejected that. And there's, you know, for all the reasons I've said, it was reasonable for the state court to reject the Brady claim. And I see that my time is up, so unless there's any more questions, I would just ask you to affirm the district court. I don't think there are any more questions. Thank you. Thank you. Rebuttal? The Supreme Court wrote in Brady that society wins when criminal trials are fair. Our system of administration of justice suffers when any accused is treated unfairly. The thrust of that statement is that fairness matters. The truth matters. Justice matters. And none of those words, fairness, truth, justice, can reasonably be associated with this trial. The state made a decision to build their case more or less solely around Mr. Kwasniewski's testimony. The state had a statement that the officer in charge took, indicating that Mr. Kwasniewski said to another witness, laid out a set of facts that was completely contradictory to the set of facts that he laid out before the jury. And instead of giving that evidence to the defense, the state sat on it. One of the things that has to be looked at, though, at that same time as the defense theory, was that he wasn't there at all. Your Honor, I acknowledge that, especially during his opening statement and very briefly during his closing statement, Mr. O'Donnell alluded to the fact that maybe Jimmy wasn't there. But at best, that could be described as a subsidiary trial strategy. Mr. O'Donnell's strategy throughout, and it's abundantly clear from the record, was to discredit Mr. Kwasniewski and paint him as someone who the jury couldn't rely on to convict Mr. Bogd of felony murder. And I would also direct the Court's attention to Mr. O'Donnell's testimony during the evidentiary hearing in the District Court. Mr. O'Donnell testified that, look, had I had that statement from Mr. Sales, I absolutely would have put it to use. He was not going to just rest on this strategy that, oh, Jimmy wasn't there at all, so I can't use this statement. That's not true. Mr. O'Donnell said, I would have used it. And the state asked him at the evidentiary hearing, well, what about the fact that you tried to argue that Jimmy wasn't there? Doesn't that sort of undercut it? And he said, you know, I still would have used the statement. It was that powerful. We would have used that evidence. Nothing in the District Court's opinion discredits what Mr. O'Donnell said there. So I respectfully submit that trial strategy shouldn't defeat our argument here. Thank you. Thank you.  And the clerk may call the next case.